***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Deluca and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties and their representatives. Accordingly, the Full Commission affirms with modifications the Opinion and Award of Deputy Commissioner Deluca. *Page 2 
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between the Plaintiff and the Defendant-Employer on June 30, 2006.
3. The carrier liable on the risk is correctly named.
4. Plaintiff's average weekly wage was $243.28, which yields a weekly compensation rate of $162.20.
5. Plaintiff sustained an injury on or about June 30, 2006, with the exact dates and exact injury/injuries to be determined by the Industrial Commission.
6. Defendant-Carrier accepted Plaintiff's claim for injury to the back via a Form 60 dated December 20, 2006, as arising out of and in the course of her employment.
7. The issue for trial is: whether Plaintiff is entitled to temporary total disability benefits and/or temporary partial disability benefits from June 30, 2006, to December 14, 2006, and continuing from December 2007.
 ***********
Based upon all the competent evidence from the record, the Full Commission finds as follows:
 FINDINGS OF FACT *Page 3 
1. Plaintiff is 46 years old and obtained her General Equivalency Diploma in approximately 1997. Plaintiff was hired by Staff One, Incorporated in January 2006. She was placed to work at E-Com wherein she worked as a telephonic customer service representative.
2. In her position with E-Com, Plaintiff worked forty hours a week on the night shift. She took inbound calls from customers who would contact the company to add or delete services to their accounts. Every effort was made to prevent customers from completely disconnecting services. Plaintiff was constantly on the phone. She would handle five to 16 calls per hour depending upon the complexity of the calls.
3. On June 30, 2006, Plaintiff was attempting to sit down in her chair when it rolled back, causing Plaintiff to fall to the floor on her right hip and tailbone. She felt immediate pain across her back and her hip with pain shooting into her legs and up her back. Plaintiff reported the incident to her supervisor.
4. Plaintiff first received medical treatment from Dr. Redeker on August 23, 2006. An MRI of the low back revealed a disc bulging at the L3-4 level, with no stenosis or nerve pressure. A right hip scan was normal. Plaintiff continued to work for Defendant-Employer in her normal capacity throughout this time. Plaintiff continued to treat with Dr. Redeker through November 15, 2006 when he referred her for an orthopaedic consultation.
5. Plaintiff was examined by Mr. Denny O'Neal PA-C, with Carolina Sports Medicine Orthopaedic Specialist. Mr. O'Neal examined the MRI and diagnosed Plaintiff with musculoligamentous strain with contusion to lumbar spine with some bulging disc. Mr. O'Neal recommended physical therapy for Plaintiff. Restrictions were issued to alternate sitting and standing for four hours a day and no lifting greater than five pounds. *Page 4 
6. On December 18, 2006, Plaintiff reported to Mr. O'Neal with worsening of her condition and pain running into both legs. Mr. O'Neal examined Plaintiff and found her to be tender over both sacroiliac joints and the right sciatic notch. Mr. O'Neal took Plaintiff out of work and referred her to the Wilmington Back Institute for possible epidural steroid injections.
7. On December 14, 2006, Defendants filed a Form 63. A Form 60 was filed on December 20, 2006. Defendants filed a Form 28T on December 20, 2006 indicating that Plaintiff returned to work on December 14, 2006.
8. On December 21, 2006, Plaintiff returned to Carolina Sports Medicine and was seen by Dr. Douglas Messina, an orthopedic surgeon. Dr. Messina noted that Plaintiff had pain radiating into her right buttock and right leg. Dr. Messina issued restrictions of no prolonged sitting, no prolonged standing, and the ability to be able to alternate from a sitting to standing position.
9. On January 25, 2007, Dr. Messina noted that she was participating in therapy but continued to have pain in her right hip area.
10 On February 20, 2007, Dr. Wall with Independence Back Institute examined Plaintiff and diagnosed Plaintiff with sacroiliitis, sacral disorder, and lumbago. Dr. Wall continued with a plan for physical therapy and added medications to assist with inflammation and pain.
11. Defendants initially authorized treatment with Dr. Wall. However, when Dr. Wall offered treatment for sacroiliitis and sacral disorder, Defendants denied treatment stating that they denied treatment to Plaintiffs right hip.
12. Dr. Wall followed Plaintiff through the summer of 2007. Dr. Wall ordered physical therapy for SI joint mobility. *Page 5 
13. Dr. Wall issued Plaintiff temporary work restrictions on September 11, 2007, of no lifting, pushing or pulling over ten pounds, no bending forward and frequent position changes alternating sitting, standing and stretching. This was the last time Dr. Wall addressed work restrictions.
14. On October 11, 2007, Plaintiff, for the first time, reported to Dr. Wall that her legs were starting to give out.
15. Plaintiff continued to work for the Defendant-Employer through the course of her treatment with Dr. Wall. She testified that she was prescribed Hydrocodone and Daypro and that prolonged sitting would increase the pain in her back. She testified that the increase in back pain would cause her vision to "go blurry" and this directly related to work as she could not see the computer screen. She also testified that she made her employer aware of the fact that she was taking Hydrocodone.
16. Defendant-Employer changed management in the fall of 2007. Prior to the change, Plaintiff had never been written up or warned for any company violations. After the management change in the fall of 2007, she testified that she was written up for labeling calls incorrectly, not making a sale or save, and not being aggressive enough to be able to retain the customer's business. She testified that the decrease in her performance was directly related to her compensable injury, fatigue, side effects of the medication, and increased pain.
17. According to Plaintiff, she was terminated on December 4, 2007, because she "dispositioned a page wrong". Dana Seamon testified that Plaintiff was terminated for miscoding a call, which violated a "zero tolerance" policy of their client, Time Warner Cable, for which others were likewise terminated. Plaintiff was made aware of Time Warner's policies prior to her termination. *Page 6 
18. Plaintiff's termination by Defendant-Employer was unrelated to her workers' compensation injury.
19. Plaintiff filed for unemployment and was awarded benefits. Plaintiff testified that she has contacted local employers regarding work such as Wal-Mart, Lowes, McDonald's, Omega Travel, and military bases.
20. On December 18, 2007, Dr. Wall noted that Plaintiff's myelogram and CT tests were basically normal with mild bulging of a disk at L3, L4-5, and no neural compromise. He stated there was nothing objective to explain Plaintiff's legs "going out." Dr. Wall opined that Plaintiff had likely reached maximum medical improvement.
21. Dr. Wall last treated Plaintiff on July 8, 2008. Dr. Wall testified that Plaintiff had reached maximum medical improvement as of July 8, 2008, and indicated the only treatment remaining that he could provide is maintenance of Plaintiff's pain medications.
22. Dr. Wall testified that during his treatment of Plaintiff, he had reason to believe that she was faking or exaggerating her level of discomfort. Specifically, he could not explain Plaintiff's complaint that her legs were giving out, because on exam her leg strength was normal.
23. Dr. Wall recommended a functional capacity evaluation (FCE) be conducted to address permanent work restrictions, if any. Dr. Wall testified that he would be willing to issue a permanency rating to the back. Dr. Wall testified he believed Dr. Foster's 2% impairment rating to the back was reasonable and that any rating he would issue would be likely insignificant, less than 5%.
24. The parties deposed Dr. Mark Foster on September 29, 2008, who the parties stipulated was an expert in orthopaedic surgery. On April 16, 2008, Plaintiff presented to Dr. Foster for an independent medical evaluation with complaints of back pain, neck pain, and leg *Page 7 
pain. Dr. Foster testified that he performed a physical examination, which revealed that Plaintiff's pulse, blood pressure, tone of voice, and posture was normal.
25. Dr. Foster noted Plaintiff had normal neurologic findings, non-organic pain behavior, and some superficial tenderness about her low back. Dr. Foster explained his "non-organic behavior" assessment as being based on Plaintiff's pain complaints that could not be substantiated on physical exam.
26. The only evidence that Dr. Foster could possibly correspond to Plaintiff's subjective pain complaints was her limited range of motion and stiffness, general state of unfitness, and possibly her disk abnormalities.
27. Dr. Foster could not determine whether Plaintiff suffered from an SI joint condition because on exam Plaintiff had "superficial tenderness" that was everywhere on her back and not localized to the SI joint area or otherwise. Dr. Foster could not "put a lot of reliability" on the "broad based" tenderness pattern Plaintiff purported.
28. Dr. Foster relayed that he would not recommend an FCE because such evaluation is based on an assumption that Plaintiff's effort and pain reports are credible. Dr. Foster opined an FCE would not give a true picture of Plaintiff's abilities because most of Plaintiff's pain complaints are not based on organic problems. Dr. Foster opined that Plaintiff's pain perception "is off," and that and an FCE would not present a true picture.
29. Dr. Foster rated Plaintiff with a 2% impairment to the back "based on her limited range of motion." Dr. Foster opined that Plaintiff is not disabled and that her 2% back impairment would not affect her return to work considering her skill set and other pre-existing conditions. Dr. Foster opined that Plaintiff could return to work as a customer service person, based on his view of what a customer service person typically would do. *Page 8 
30. Dr. Foster testified that Plaintiff did not seem motivated to return to work based on the fact that her complaints of severe pain did not correspond to her physical findings of a normal pulse and blood pressure and her ability to sit normally. Dr. Foster did not recommend any further treatment or any further testing considering the length of time since Plaintiff's injury, the nature of her injury, and her examination.
31. On January 19, 2010, Plaintiff underwent an FCE by Mr. Brian L. Allen, a physical therapist with Select Physical Therapy in Wilmington, North Carolina as ordered by the Full Commission. The results of the FCE indicate that Plaintiff has the ability to work at a minimum in a sedentary capacity. Plaintiff can perform an occasional waist to shoulder lift of ten pounds and a frequent waist to shoulder lift of three pounds. Plaintiff demonstrated the ability to sit constantly and occasionally stand and walk. Plaintiff can stoop and reach at desk-height and overhead occasionally. Plaintiff demonstrated consistency of effort on 13 of 20 consistency of effort tests indicating inconsistent efforts. Based upon the inconsistencies observed during the pre-functional capacity musculoskeletal screen and consistency of effort testing, Plaintiff may have further functional abilities.
32. Based upon the greater weight of the evidence, Plaintiff has failed to prove she is entitled to any indemnity benefits from June 30, 2006 to December 14, 2006. As she was never written completely out of work throughout this time, Defendant-Employer had work available for Plaintiff within her restrictions, and Plaintiff in fact returned to work for Defendant-Employer at her pre-injury wages throughout the period.
33. Based upon the greater weight of the evidence, Plaintiff has failed to prove that she is not able to work or that she suffers any disability justifying the payment of indemnity benefits ongoing since the date of her termination in December 2007. *Page 9 
34. Based upon the greater weight of the evidence, Plaintiff has failed to prove any disability to the back, hips or otherwise, and Plaintiff is capable of returning to work in her pre-injury capacity.
 ***********
Based on the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff suffered a compensable injury by accident to her back on June 30, 2006. N.C. Gen. Stat. § 97-2 (6).
2. Plaintiff is entitled to medical treatment resulting from her compensable injury as is reasonable and necessary to effect a cure, provide relief or lessen the period of disability. N.C. Gen. Stat. § 97-25.
3. The determination that a plaintiff is disabled is a conclusion of law that must be based upon findings of fact supported by competent evidence. Hilliard v. Apex Cabinet Co., 305 N.C. 593,290 S.E.2d 682 (1982). "The burden is on the employee to show that he is unable to earn the same wages he had earned before the injury, either in the same employment or in other employment." Id. This burden can be achieved in one of the four following ways: "(1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other *Page 10 
employment at a wage less than that earned prior to the injury."Russell v. Lowe's Product Distribution, 108 N.C. App. 762, 765,425 S.E.2d 454, 457 (1993).
4. Based upon the greater weight of the evidence, Plaintiff has failed to meet the burden of providing disability underRussell and is therefore not entitled to indemnity benefits.Id.
5. Plaintiff has failed to prove any loss of earnings from June 30, 2006, to December 14, 2006, and is not entitled to indemnity benefits during this time. N.C. Gen. Stat. §§ 97-29; 97-30.
6. On December 4, 2007, Plaintiff was terminated for misconduct and fault, unrelated to her compensable injury, for which a non-disabled employee would ordinarily have been terminated by Defendant-Employer. Seagraves v. Austin Co. of Greensboro,123 N.C. App. 228, 472 S.E. 2d 397 (1996). Accordingly, plaintiff's termination constituted a constructive refusal of suitable employment. N.C. Gen. Stat. § 97-32.
7. Under the Seagraves analysis, after an employer has proven that the employee's termination constitutes a constructive refusal of employment, an employee must then show that her inability to find other employment at wages comparable to those earned prior to the injury is due to the work-related disability. Seagraves v. AustinCo. of Greensboro, supra.
8. In the present case, Plaintiff did not meet her burden to prove that after her termination on December 4, 2007, she was incapable of finding work because of her work-related injury. Plaintiff did not show that she was unable to earn wages, unable to obtain employment after a reasonable effort, or that it was futile for her to seek employment because of other factors. Demery v. Perdue Farms,Inc., 143 N.C. App. 259, 545 S.E.2d 485 (2001); Russell v.Lowes Product Distribution, 108 N.C. App. 762,425 S.E.2d 454 (1993). Therefore, *Page 11 
after December 4, 2007, plaintiff failed to prove that she was disabled from employment due to the compensable injury, and she is not entitled to any compensation
 ***********
Based on the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission makes the following award:
 AWARD
1. Defendants shall pay all medical expenses incurred by Plaintiff for reasonably necessary medical care.
2. Plaintiff has failed to prove the existence of any disability resulting in loss of compensation from June 30, 2006 to December 14, 2006; therefore, Plaintiff's request for indemnity benefits pursuant to N.C. Gen. Stat. §§ 97-29 or 97-30 throughout this time is hereby denied.
3. Plaintiff's request for ongoing benefits for temporary total disability since her termination on December 4, 2007 is DENIED.
4. Defendants shall bear the costs.
This the 1st day of June 2010.
 S/___________________ STACI T. MEYER COMMISSIONER
CONCURRING: S/___________________ DIANNE C. SELLERS *Page 12 
COMMISSIONER
S/___________________ BERNADINE S. BALLANCE COMMISSIONER *Page 1